Mr. Abdelnour. Good morning, and may it please the Court, Dennis Abdelnour on behalf of Appellant and Patent Owner in this case, Neapco Drivelines. There are two issues we've raised on appeal. They're both independent errors requiring separate relief. The first is whether the preamble is limiting. The second is whether the prior art satisfies the limitation providing event. Because the first one is independent and requires relief, and if the Court agrees with us on that I'm going to focus my argument today on the first issue, unless of course there are questions on the second. I don't understand how the first issue can be dispositive when the Board said that even if it adopted your construction of the preamble and found it limiting, it would reach the same result. What the Board said there was if the preamble is limiting, it would construe the preamble in a particular way, and our argument is that this alternative construction that the Board suggested, and I believe that's at appendix page 16, is an incorrect claim construction. So the way we've framed this issue, Your Honor, is one, the Board erred in finding the preamble was not limiting, and two, if the preamble is limiting, it should be given its plain and which would require venting to outside the slip joint assembly. And if those two, if the Court agrees with us on both of those fronts, then there is no dispute in this case, and American Axles conceded, and their expert has conceded, that the prior art burden reference, which was the primary reference, anticipatory and primary reference in the obviousness combination, doesn't satisfy the preamble. Counsel, this is Judge Moore. I also don't understand your suggestion that these are independent bases. I understand your burden argument to hinge upon us adopting the claim construction you prefer. I don't understand your burden argument as legitimately challenging the fact finding that burden provides event as construed by the Board. Okay, so let me clear that up then, Your Honor, because the question of whether burden satisfies the providing event limitation is an application of that construction. And there's no dispute as to burden that the slip joint assembly is completely sealed. No air ever escapes to outside the slip joint assembly. Yes, but Counsel, the claim construction event adopted by the Board, it just has to escape the cavity. And in burden, it escapes the passage that it's in. So, why is that not something that we would say is supported by substantial evidence? That the Board did not conclude it has to escape the entire slip joint assembly, just that it had to escape a cavity. And, Your Honor, and the reason for that is the construction event was made specifically with respect to the limitation within the body of the claim providing event. And the argument and the reason it says a cavity there is because the body of the claim specifically points to leaving the two different cavities. Our argument as to the preamble is that the preamble says a method of venting a slip joint assembly. Yes, Counsel, but this is not my independent argument on appeal, either one of which could entitle you to judgment in your favor. And I'm saying I don't see how you've made any argument at all about burden that is independent from your preamble argument. Okay. Well, Your Honor, page 49, I believe of our opening brief is where we talk about the admissions that Burton doesn't vent outside the slip joint assembly. And so, the argument on appeal, to be clear, is that the preamble requires something more and in addition to what's recited in the body of the claim. The Board found that Burton satisfies the body of the claim. So, for purposes of the preamble argument, assume that to be true. But at page 49 of our brief, we point out that even if Burton satisfies the providing of vent limitation, even if Burton satisfies the body of the claim, it does not satisfy the preamble. And the only way the Board found anticipation was explicitly finding that the preamble didn't limit in this case. And the Board erred in finding the preamble didn't limit because it misidentified the invention in the patent. We know that the patent is not concerned with sealed slip joint assemblies. The invention is a specific improvement and it is an improvement only to vented slip joint assemblies. Looking at the problem in the prior art that the 520 patent identifies, the problem, and it uses Cook, Jr. as an example. Cook, Jr. is a vented slip joint assembly where there is venting to outside the slip joint assembly. The problem with Cook, Jr. identified by the 520 is it allows for the ingress of contaminants at the lubricant zone. And so the inventor said, we want to keep the venting. We want that reduced resistance from venting, but we want to get rid of the problem of contamination. And so what they did was they moved the location of the vent to the opposite end of the slip joint assembly, wherein they were able to keep the benefits of venting, which is reduced resistance against slip, but they eliminate or minimize the problem of contamination entering into the slip joint lubricant zone. This problem doesn't exist in the context of a sealed slip joint assembly, such as in Burton. And Cook, Jr., for example, actually discloses an alternative embodiment. It's the case, is it not, that in the primary embodiment in your patent, as well as in Burton, it's a sealed assembly. It's not vented to the outside air, right? That's not correct, Your Honor. Let me explain. In our patent, air escapes outside the opposite end of the slip joint, and it escapes into the hollow driveshaft tube. Every expert and everybody in this case agrees that's outside of the slip joint assembly. I understand that, but it's not vented to the outside air. That's only presented in the patent as an alternative embodiment. The primary embodiment is a sealed assembly in which the air moves from one chamber to another, and that's true in Burton as well, right? Again, Your Honor, respectfully, let me disagree and explain. The air escapes the slip joint assembly into the hollow driveshaft. The hollow driveshaft is not a part of the slip joint assembly. It's a different component. I understand that, but that wasn't my question. My question was that in Burton and in your patent, they both involve sealed systems in which the air vents from one chamber to another, and your argument, and your only argument, as I understand it, is that Burton is different because in Burton, it's venting within the slip joint assembly, whereas in your patent, it's venting to another portion of the assembly. Is that correct? It's not correct, and the reason I'm disagreeing, Your Honor, is because where it is venting to in the 520 patent is indisputably outside the slip joint assembly. In Burton, the end of the mail shaft has a cap on it, and it's welded to it. That keeps everything within the slip joint assembly, and so I guess my disagreement is over the system. I agree with you that in the 520 patent, we vent to outside the slip joint assembly, and in certain instances, it's still contained within a larger system that includes the hollow driveshaft, but the hollow driveshaft is not a part of the slip joint assembly, and the fundamental difference with Burton is that Burton has that cap welded to the end of the mail shaft in the slip joint assembly, so nothing ever escapes, and what you end up having is a circulation almost like a pump system where lubrication and air is pumped back and forth between these internal chambers, and the testimony in this case is that when you vent to outside the slip joint assembly, even though it's being vented to the hollow driveshaft, the hollow driveshaft is a separate component. The size of the volume of that cavity is many times larger than the size of the cavities within the slip joint assembly, and so you do get venting, and it's a fundamental difference. Judge Moore, but one of the important differences, it seems to me, is that in Claim 6 of your patent, you make it clear that the venting is not just outside of the first and second cavity, but it's into the driveshaft assembly, so outside of the slip joint assembly and into the driveshaft assembly, the large, you know, two foot long driveshaft, and so that's Claim 6. Claim 6 says where are we going to vent to? We're going to vent into the driveshaft assembly, which means completely out of the slip joint assembly, but the claim at issue here, Claim 11, says you vent outside of the first and second cavity. That still leaves room for venting within the slip joint assembly itself. It distinguishes between when you would vent out of the slip joint assembly, a la Claim 6, from when you would vent possibly still within the slip joint assembly, Claim 11. How do you deal with that? Right, Your Honor. Well, first of all, it's not a claim differentiation question because they're separate independent claims. I didn't ask you if it was a claim differentiation question, counsel. I'm telling you, you knew how to specify when you wanted the Claim 11. In contrast, you just said you wanted to vent outside the first or second cavity. Why should we import into that the broader venting outside of the whole slip joint assembly? Our position, Your Honor, is that the preamble fills in that critical missing gap, and when you do the analysis of whether the preamble limits and whether it provides necessary and important scope and context to the body of the claim, the preamble is doing that work. Our position is that the fact that you see that additional information in Claim 6, but it's absent from Claim 11, only further supports the notion that the preamble is doing additional work here. But counsel, the preamble is virtually the same between Claim 6 and Claim 11, recognizing one is apparatus and the other is method, but they both have the vented slip joint assembly language. So if I were to buy into what you want me to with regard to the preamble, then it seems like it would be superfluous in Claim 6. Well, Your Honor, for example, in shoes by firebug, this court hasn't hesitated to find a different situation and circumstances. The same preamble can be limiting in one and not limiting in the other. Here, we've got another difference. It's a method claim versus an apparatus claim. But nevertheless, Claim 11 in the preamble brings the scope of these claims back into line with what was actually invented, the specific improvement to a specific vented slip joint assembly. And without that critical information from the preamble of Claim 11, the scope of these claims is broadened to where you get this contradictory situation that burden, which is indisputably a sealed slip joint assembly, reads on the body of Claim 11. And we're simply asking the court to give the plain meaning of the preamble its limiting weight, which brings the scope of the claims into line with the actual invention disclosed and no broader. I'll reserve my remaining time. Thank you, Your Honors. All right, Mr. Kappers. Good morning, Your Honor. Robert Kappers on behalf of the American Actual. May it please the court. The court should affirm. NAPCO is asking the court to do two things that it should not be doing. NAPCO first asked the court to make the preamble of Claim 11, venting a slip joint assembly, a second vent limitation when the claim body already has a slip joint. And when Claim 6 shows that the inventors did not intend for the preamble to serve as a limitation. But then NAPCO is going further and it asks this court to change the plain meaning of the preamble to require external venting outside of a slip joint and exclude the internal venting from one cavity of the assembly to another cavity, which is supported by the intrinsic evidence in this case. So you just suggested that they want to change the meaning of the preamble. I thought your argument was that the preamble is not a limitation at all, not that they wanted to change the meaning of it. Your Honor, we've made both arguments that the preamble is not a limitation and just as a threshold matter, it should not be construed to limit Claim 11. But we made the separate argument that the preamble still covers venting one cavity of a slip joint to another cavity. It covers the type of internal venting of a slip joint. If the preamble is a limitation and it says a vented slip joint assembly, wouldn't the plain meaning of that language mean that the air is going to vent outside the assembly, a vented slip joint assembly? No, Your Honor. You can have internal passageways within the assembly that vent the cavities and relieve pressure, a pressure differential that exists in those cavities during operation. And that's certainly... Counsel, you can't actually in the context of this invention. The slip joint assembly is a minuscule device. How can you control for pressure by venting from one cavity to the other in a device of this size? Your Honor, as the mail shaft, the stud yoke plunges into the slip yoke, it's going to decrease the volume in that cavity and pressure is going to increase. And adding a vent is what relieves that pressure and it allows the air to escape into the other cavity. And American Axles expert in this case showed how applying like basic physics, the combined gas law showed how even adding a vent in an assembly like Burton, where air is vented from one cavity to another equally sized cavity, still release pressure in that joint. And Burton discusses this, how these passages reduce resistance in that joint as a result. But as the... Your Honor, Judge Moore, you are correct. We're arguing that the preamble is first, just not a limitation. And the body of claim 11 already has a vent limitation and it's clear. It covers the escape of compressed air from a cavity to another cavity of the assembly. And Niafco is asking this question... Counsel, when the summary of the invention says, a vent for escape of compressed air in a manner which does not enable ingress of contaminants, is that satisfied by simply venting from one cavity to the other? Yes, Your Honor. If we look at Burton, Burton solves the exact same problem that the 520 patent is trying to solve. It closes the system to keep contaminants out of the system and keep lubricant in. But then it adds these passageways to relieve the increase in pressure that occurs in those describes, which is venting from the end of the... From the end, the opposite end of the spline yoke where there's a cap. And so, yes, Burton does provide that type of venting described. But I understand that you're saying Burton does, but doesn't... If I construe vent, a vented slip shaft... I'm sorry, a vented slip joint system the way that you want me to, doesn't it potentially allow contaminants? This is an unsealed system. Burton is a sealed system. There's no concern about contaminants in Burton. So this is an unsealed system. So doesn't the construction you're giving allow for contaminants to get in? Um, in... It would depend on the configuration of the system, Your Honor. If the system is open to the atmosphere, yes, there would be some risk that contaminants could enter that system. Wouldn't your answer to my question be that if I give the preamble meaning it would cover... Still cover both sealed and unsealed systems and that Burton would therefore anticipate... May not anticipate the unsealed systems, but it would at least anticipate as to the sealed systems and that that's all you need for anticipation of any portion of the claim is anticipated, the whole thing goes down. Is that what your answer ought to be? Yeah. Yes, Your Honor. That's exactly right. And, um, NEAPCO in this case and before the board has presented this false dichotomy between a sealed assembly or a closed assembly and a vented assembly. And those two concepts are just completely different. Sealing keeps the, you know, lubricant in and the contaminants out of the system, but venting is what relieves the and so you can have a sealed or a closed system that is also vented. And that is why even if the preamble were a limitation, the preamble is still, should still be construed to cover the type of internal venting that Burton teaches. Counsel, what are the four exceptions? I mean, we have a general rule. Preambles are not limitation, but what are the four exceptions to that rule that stem from Catalina marketing? Um, let me grab my notes here, Your Honor. Um, but yeah, Catalina provides several of these guide posts. And in this case, each of those guide posts leads to the same conclusion. Um, you know, I don't know if this court has characterized them as exceptions or not, but exceptions or not, they still lead to the same conclusion that the preamble is not limiting. Um, for example, the claims certainly recite a structurally complete invention. There's already a vent limitation in the claim body. And Yapko has argued that the vent limitation is incomplete simply because it doesn't identify the destination for the air that escapes, but it does because it recites outside of the first and second cavity. And that's the destination that the inventors of the 520 patent chose for claims 11 and 12, but did not choose for other claims like claim six. And another exception, Your Honor, is, um, focuses on the specification and whether underscores is important, um, the, the structure recited in the preamble. And it's true that in the 520 patent, the final destination for the air is described as the drive shaft tube or the atmosphere, but that's not the invention of the 520 patent. It's talking about relieving pressure from the two cavities, internal bore 16 or cavity 60. And it talks about doing it in a way that vents from the opposite end of the slip yoke. And what the prior art shows, including Burton is that you can have a closed system and do both of those things. Go ahead. No, Your Honor. I was just about to conclude. So thank you. Um, so to conclude, the court should affirm the board's judgment that claims 11 and 12 of the 520 path are unpackable. Thank you. Nice job, counsel. Thank you, Mr. Kappers. Mr. Abdelnour. Thank you. Uh, directly to the question of, uh, what is the meaning of the preamble in the event that it limits? It means what it says. It means what this patent says, which is venting to outside the slip joint assembly. And judge Moore, I think you had a right when you said there is no way to cavities. You have to go to outside in the five tool patent. It's going to the hollow drive shaft or further to the atmosphere. And you know that it's getting the benefits of venting to outside the slip joint assembly, looking at columns three, starting at 19 to 25, talking about how you have reduced resistance during installation and you have reduced resistance during operation. Burton is exactly the opposite. And Burton describes a vent hole in, in Burton. It has a vent hole that is actually plugged. The vent hole is provided to reduce resistance during installation and it actually plugs it. And it says, well, we're going to have increased resistance during operation, but we're going to balance the different pressures on the, on each side of the slip joint. Meaning it's a fundamentally different system. The five tool is a narrow improvement to a particular type of system, a vented slip joint assembly. And the preamble and the body of the limitation, the body of the limitation, sorry, the body of the claim provides that improvement and the preamble tells you what it is improving. And in this context, this court has not hesitated to find a preamble limiting, for example, applied materials, year and company and applied materials. For example, the question was, does a cold purge process in the preamble limit and the board, this court did exactly the same analysis. It looked at the problem, the patent, the patent overcame and the invention. And it found that problem exists only in the context of processes. And if I just may finish my thought and therefore, and therefore the preamble and the body of the claim go hand in glove and they're, they're used in combination to define the scope of the claim. And again, we ask that the court find the preamble limiting given it's giving it's plain meaning. And if it does so that's the true scope of the invention and Burton does not anticipate. Thank you very much. Thank you, Mr. Eleanor. Thank you, Mr. Kappers. The case is submitted.